Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3141 | **DATE** | August 13, 2002 |
| **CASE TITLE** | *Bassett v. Sinterloy Corp., and Hawk Corp.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Hawk's Motion to Dismiss/Defendant Hawk's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Hawk's motion to dismiss for lack of personal jurisdiction [21-1] is DENIED. Hawk's motion to dismiss Count II of the Amended Complaint [21-1] is GRANTED.

(11) ■ [For further detail see order attached to the original minute order]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 15 2002 date docketed | 34 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR BASSETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | The Hon. Blanche M. Manning |
| v. ) | |
| ) | Case No. 01 C 3141 |
| SINTERLOY CORPORATION, a Delaware ) | |
| corporation, and HAWK CORPORATION, ) | |
| a Delaware corporation, ) | |
| ) | |
| Defendants. ) | |
| ) | |

DOCKETED
AUG 1 5 2002

## MEMORANDUM AND ORDER

Plaintiff Arthur Bassett brought this action against Hawk Corporation ("Hawk") and its wholly owned subsidiary, Sinterloy Corporation ("Sinterloy"), pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging that Sinterloy and Hawk discriminated against him based on his disability. Also, Bassett alleges retaliatory discharge claims against both Sinterloy and Hawk based on his filing of a worker's compensation claim and a complaint with the Occupational Safety and Health Administration ("OSHA").

Defendant Hawk brings the present motion to dismiss based on this court's lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Hawk also moves to dismiss the ADA claim against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to a state claim. In the alternative, Hawk moves for summary judgment pursuant to Fed. R. Civ. P. 56.[1] For the following reasons, Hawk's motion to dismiss based on lack of personal jurisdiction is denied, and Hawk's motion

---

[1] Because Bassett did not comply with the "safe harbor" provisions under Fed. R. Civ. P. 11(c)(1)(A), this court will not consider Bassett's request for sanctions. *See Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1026 (7th Cir. 1999); *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1057-59 (7th Cir. 1998).

for summary judgment as to the ADA claim against it, Count II of the Amended Complaint, is granted.

## I. BACKGROUND[2]

### A. Hawk and Sinterloy

Hawk is a Delaware corporation maintaining its principal place of business in the State of Ohio. Hawk is the parent company of Sinterloy and two other subsidiaries in the State of Illinois, all of which are incorporated in Delaware. Hawk and Sinterloy maintain separate facilities, corporate records, and bank accounts. Hawk does not have a payroll or directly employ anyone in Illinois. Hawk does not own real estate or maintain an office in Illinois.

Hawk and Sinterloy's officers and directors overlap. From February 1998 to February 2000, the Board of Directors of Hawk and Sinterloy were the same individuals. With the exception of Sinterloy's President, the officers of Hawk and Sinterloy were also the same.

On a daily basis, Hawk provides Sinterloy with operating loans through a main concentration account in the name of Hawk Corporation. Sinterloy borrows from or pays back the concentration account on a daily basis, but does not execute a new demand note with each loan. Sinterloy uses these monies for daily operations.

Hawk also provides administrative services to Sinterloy. These services include professional insurance, medical benefits, life insurance, and a 401(k) retirement plan. Hawk

---

[2] This court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties, when determining a motion to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b); *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994). In addition, the court treats Hawk's second motion as one for summary judgment under Fed. R. Civ. P. 56. Therefore, the background section is based on the pleadings and outside materials submitted by Hawk and Bassett, including the parties Local Rule 56.1 statements. *See Schultz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir. 1992).

2

allocates the cost of administering these services and overhead to its subsidiaries on a per use basis.

### B.     Arthur Bassett

Sinterloy hired Bassett in May of 1998 as a maintenance mechanic. In October of 1998, Bassett was diagnosed with restrictive airway disease and occupational asthma. At that time, Bassett was working as a plant manager for Sinterloy in Springfield, Illinois, where he was allegedly exposed to toxic substances. Consequently, Bassett filed a worker's compensation claim.

On January 31, 2000, an attorney from an Illinois law firm filed an appearance with the Industrial Commission of Illinois on behalf of both Hawk and Sinterloy in Bassett's worker's compensation claim under the Illinois Workers' Compensation Act and Occupational Diseases Act. On January 22, 2001, after the parties negotiated a settlement, the Illinois attorney representing Hawk and Sinterloy mailed Bassett's attorney a letter with an executed Settlement Contract Lump Petition and Order ("Contract") and a Worker's Compensation Settlement Agreement ("Agreement"). The Contract listed "Hawk/Sinterloy" as Bassett's employer. The Agreement listed only Hawk as the employer. The Agreement was approved by Fireman's Fund, Hawk's insurer, and on January 31, 2001, Fireman's Fund issued Bassett a settlement draft for the lump sum settlement portion of the worker's compensation claim. Hawk was listed as the sole insured on the draft.

In September of 1999, Bassett filed a complaint with OSHA, alleging various workplace violations. On February 8, 2000, Bassett requested that he be reassigned because of his disability. Three days later, Sinterloy denied Bassett's request and terminated his employment.

3

Bassett then filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 29, 2000, alleging that he had been discriminated against because of his disability. In the box for "Employer" Bassett listed only Sinterloy. On January 31, 2001, the EEOC sent Bassett a "Notice of Right to Sue" stating that he had the right to sue "respondent(s) named in your charge in a court of competent jurisdiction." Bassett commenced this action on May 1, 2001. He filed an amended complaint on May 11, 2001.

### III.    MOTION TO DISMISS UNDER RULE 12(b)(2)

#### A.    Standard

In ruling on a motion to dismiss for lack for personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *See* Fed. R. Civ. P. 12(b); *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994). When determining personal jurisdiction, the court must accept the allegations in plaintiff's complaint as true to the extent that they are not controverted by the defendant's affidavits and resolve any conflicts in the affidavits in the plaintiff's favor. *See Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). The plaintiff has the burden of proving the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

In a federal question case, the law governing personal jurisdiction parallels the rules governing service of process. *Swaim v. Moltan Co.*, 73 F.3d 711, 719-20 (7th Cir. 1996). Federal statutes often provide for nationwide service of process for nonresident corporations, however, in the absence of statutory provisions, service of process is governed by the law of the state in which the district court sits. *Id.* Because the ADA does not provide for nationwide service of process, the court determines personal jurisdiction based on the Illinois long-arm

statute. *See id.* at 720 (court applied Illinois long-arm statute because ADEA did not provide for nationwide service of process).

Under the Illinois long-arm statute, general jurisdiction is proper where the defendant has continuous and systematic general business contacts with Illinois. *RAR, Inc.*, 107 F.3d at 1277; *Borden Chem. and Plastics, L.P. v. Zehnder*, 312 Ill.App.3d 35, 41 (1st Dist. 2000). On the other hand, specific jurisdiction arises out of, or is related to, a defendant's contacts with Illinois. *RAR, Inc.*, 107 F.3d at 1277; *Borden Chem.*, 312 Ill.App.3d at 41.

In order to determine whether personal jurisdiction is proper, the court must consider: (1) whether the Illinois long-arm statute grants jurisdiction; and (2) whether this court's assertion of jurisdiction is consistent with the Illinois and United States Constitutions. *RAR, Inc.*, 107 F.3d at 1276. Because the Illinois statute authorizes "jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States", *see* 735 ILCS 5/2-209(c), these considerations collapse into two constitutional inquiries – one state and one federal. *RAR, Inc.*, 107 F.3d at 1276.

### B. State and Federal Analysis

#### 1. The State Inquiry

The Illinois Supreme Court has indicated that when exercising jurisdiction over a nonresident defendant, the Illinois courts go beyond federal due process guarantees and the "literal textual descriptions" in the Illinois long-arm statute. *Rollins v. Ellwood*, 141 Ill.2d 244, 274 (1990). The Illinois Supreme Court reasoned that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect

interests located in Illinois." *Id.* Other than the *Rollins* court's reasoning, Illinois courts provide little guidance as to how Illinois due process protections differ from federal due process in the context of personal jurisdiction. *RAR, Inc.,* 107 F.3d at 1276.

Here, the parties themselves have not addressed the scope of Illinois' due process protections. Instead, they have concentrated on whether Hawk falls under the Illinois long-arm statute by "transacting business" in Illinois. Absent argument from either Hawk or Bassett, this court is unwilling to determine whether Illinois due process differs from federal due process. *See RAR, Inc.,* 107 F.3d at 1277 (federal court hesitant to venture "unguided" into Illinois Constitutional law); *see also Central States,* 230 F.3d 934, 940 (7th Cir. 2000) (because defendants did not argue that state constitutional law prohibited exercise of jurisdiction, court assumed that personal jurisdiction did not violate Illinois Constitution). Therefore, this court turns to the federal inquiry.

### 2. Federal Inquiry

Federal due process requires that a nonresident defendant have "minimum contacts" with the forum state and that the nonresident defendant "purposefully availed itself" of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 315 (1945). The "purposeful availment" requirement ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of another party. *See Burger King v. Rudzewicz,* 471 U.S. 462, 474-75 (1985). Federal due process also requires that the exercise of personal jurisdiction over a nonresident defendant must be reasonable and that exercising jurisdiction does not violate traditional notions of fair play and substantial justice.

6

*Burger King,* 471 U.S. at 476; *International Shoe,* 326 U.S. at 316.

Factors which courts consider when determining the reasonableness of exercising personal jurisdiction over a nonresident defendant, include the state's interest in providing a forum to the plaintiff, the burden of defense on the defendant, the burden of prosecution elsewhere on the plaintiff, the extent to which the claim is related to the defendant's local activities, and avoidance of a multiplicity of suits. *See Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 115 (1987).

### a. Minimum Contacts

Because Hawk does not directly employ anyone in Illinois or own real estate or maintain an office in Illinois, this is not a general jurisdiction case. *See RAR, Inc.,* 107 F.3d at 1277 (general jurisdiction appropriate when party has continuous and systematic general business contacts with Illinois). Instead, Bassett's claims relate to Hawk's contacts with Illinois in the context of Bassett's workplace injury, making this a specific jurisdiction case. *See id.* Specific jurisdiction applies when the court asserts jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n.8 (1984).

In other words, to exercise specific jurisdiction, the plaintiff's cause of action must arise out of or be related to the defendant's minimum contacts with the forum state. *See RAR, Inc.,* 107 F.3d at 1277. "Crucial to the minimum contacts analysis is showing that the defendant 'should reasonably anticipate being haled into court' [in the forum state] because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities there.'" *Id.* (citations omitted). Factors that indicate purposeful availment making litigation in a forum foreseeable to a

7

nonresident defendant, include the parties' negotiations, the future consequences contemplated by the parties, the terms of any contracts at issue, and the parties' actual course of dealings. *Burger King*, 471 U.S. at 479.

This court first examines Hawk's minimum contacts with Illinois for evidence of "purposeful availment" and if Bassett's causes of action arise out of or relate to Hawk's minimum contacts. Because Bassett's claims relate to his workplace injury, the court examines Hawk's contacts with Illinois in the context of Bassett's injury that occurred on the job and its consequences.

Bassett filed a worker's compensation claim after he was exposed to toxic substances while working as a plant manager at the Springfield, Illinois, Sinterloy plant. An Illinois attorney filed an appearance with the Industrial Commission of Illinois on behalf of "Hawk/Sinterloy" in the worker's compensation case pursuant to the Illinois Workers' Compensation Act and Occupational Diseases Act. After the parties held negotiations, the Hawk/Sinterloy attorney sent Bassett's attorney a letter with an executed Settlement Contract Lump Sum Petition and Order ("Contract") and a Worker's Compensation Settlement Agreement ("Agreement"). The Contract lists "Hawk/Sinterloy" as Bassett's "Respondent/Employer." The Settlement Agreement unequivocally lists Hawk, not Sinterloy, as the "Respondent/Employer." The check that Fireman's Fund, Hawk's insurer, issued as part of the settlement Agreement and Contract listed Hawk, not Sinterloy, as the insured.

Viewing these contacts with Illinois in a light most favorable to Bassett, this court concludes that Hawk's participation in the negotiations and settlement of Bassett's worker's compensation claim satisfy the minimum contacts requirement. Hawk's contacts with Illinois are

8

reflected by Hawk's actual course of dealings with Bassett which included settlement negotiations with Bassett and being a party to the settlement contracts. *See, e.g., Burger King*, 471 U.S. at 479-80 (despite defendant's lack of physical ties to forum state, defendant deliberately reached out and negotiated a contract in the forum). Hawk's actions in Illinois were not random and the parties' negotiations were not a unilateral act. *See id.* at 475-76 (where defendant deliberately engaged in activities in forum, actions not random). Also, Bassett's claims in his federal complaint relate to Hawk's contacts with the State of Illinois.

### b. Due Process

Because minimum contacts with Illinois have been established, the court addresses whether exercising jurisdiction over Hawk is reasonable and does not violate traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476. Applying the reasonableness factors as set forth by the Supreme Court in *Asahi Metal*, the court concludes that exercising jurisdiction over Hawk is reasonable and fair. *See Asahi Metal*, 480 U.S. at 115.

First, Illinois has an interest in providing a forum in which Bassett may litigate his employment discrimination claims – the state has an interest that its citizens are treated fairly and equally in the workplace. Second, the burden on Hawk to appear in an Illinois court is slight, given that Hawk has already appeared in Illinois to negotiate the various legal agreements pertaining to Bassett's worker's compensation claim. The burden on Bassett to appear in Delaware or Ohio is higher because it is unlikely that Bassett has a reason to appear in Delaware or Ohio, whereas Hawk already conducts business with Sinterloy and its other Illinois subsidiaries. Lastly, if this court did not hear this case, there would be multiple suits to resolve the same issue – suits against Sinterloy in Illinois and suits against Hawk in Delaware or Ohio.

9

Therefore, it is in the interest of judicial economy that this claim be heard in this forum. *See Asahi Metal*, 480 U.S. at 113; *In re Oil Spill by the Amoco Cadiz*, 699 F.2d 909, 917 (7th Cir. 1983).

This court concludes that its exercise of personal jurisdiction over Hawk is reasonable and fair under the federal due process clause. Therefore, Hawk's motion to dismiss pursuant to Rule 12(b)(2) is denied.

## IV.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Carrett*, 477 U.S. 317, 322-23 (1986). The court must evaluate the admissible evidence supporting the motion in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.  Analysis

Hawk argues that because Bassett did not list Hawk on his EEOC charge, Bassett cannot bring the present ADA claim against it. The parties do not dispute that Bassett listed only Sinterloy, not Hawk, on his EEOC charge. Therefore, the issue before this court is whether Bassett's suit against Hawk for alleged violations of the ADA can proceed despite Bassett's

10

admitted omission.

The Seventh Circuit recently reiterated the well-established principle that if a party is not named in an EEOC charge, it cannot be sued under the federal discrimination laws. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001); *see also* 42 U.S.C. § 2000e-5(f)(1). Specifically, the *Olsen* court held that if a parent organization is not named in a plaintiff's EEOC charge, the parent must be dismissed from the suit unless the plaintiff can show: (1) the parent had notice of the claim against it; and (2) the parent had the opportunity to conciliate on its own behalf. *Olsen*, 267 F.3d at 604.

The issue here, then, is whether Bassett has presented sufficient evidence to create a genuine issue of material fact as to whether: (1) Hawk had adequate notice of Bassett's claim against it; and (2) Hawk passed upon an opportunity to conciliate the EEOC claim on its own behalf.

### 1. Notice

Bassett must establish more than that Hawk had notice of the EEOC charges against Sinterloy, he must show that Hawk had notice that it was subject to suit. *See Olsen*, 267 F.3d at 604; *see also Bright v. Roadway Servs., Inc.*, 846 F.Supp. 693, 697 (N.D. Ill. 1994) (decisive factor in determining if unnamed parent company is proper party is whether the parent had notice that it, not the subsidiary, was subject to the lawsuit).

Bassett does not provide specific facts supported by evidence that Hawk had notice that it was subject to the ADA claim. Instead, Bassett contends that because Sinterloy is Hawk's wholly owned subsidiary, the court would be "splitting hairs" to conclude that Hawk did not have notice of the EEOC charges against Hawk itself. However, Bassett cannot rest solely on the

parent-subsidiary relationship to demonstrate that Hawk had adequate notice that the EEOC charges were also against it. *See, e.g., Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126-27 (7th Cir. 1989).

Without citing any controlling legal authority, Bassett contends that Hawk and Sinterloy overlap to the extent that notice for one fulfills the requirements for both corporations. In support of his argument, Bassett points to Hawk and Sinterloy's overlap in officers, directors, and its lending practices. In Bassett's EEOC charge, however, there is no mention of Hawk or any of Hawk's overlapping officers, directors, or lending practices. There is nothing in the charge that would implicate Hawk in any way – the charge does not allude to Hawk or its directors or officers. *Compare Eggleston v. Chicago Journeymen Plumbers Local Union*, 657 F.2d 890, 906 (7th Cir. 1981) (EEOC charge clearly complained of discriminatory conduct by labor organization committee as well as labor organization itself). Therefore, the fact that there is overlap between the two corporations does not fulfill the requirement that Hawk had notice that it was subject to the ADA claim.

Besides self-serving allegations without factual support, Bassett does not provide any evidence indicating that Hawk was put on notice that the ADA claim was against it. Bassett's statements alone cannot create a genuine issue of material fact for trial. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *see also Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (Rule 56 requires more than a bald assertion of the general truth of a particular matter – it requires affidavits that cite specific concrete facts establishing the existence of the truth).

As such, viewing the facts in a light most favorable to Bassett, his unsubstantiated

allegations that Hawk had notice of the ADA claim against it do not create a genuine issue of fact for trial. *See* Fed. R. Civ. P. 56(e).

### 2. Conciliation

Even if Bassett were to show that Hawk had notice that it was subject to the ADA claim, Bassett has not established that Hawk was given an opportunity to conciliate the claim. Bassett contends that the requirement that Hawk be presented with an opportunity to conciliate on its own behalf is irrelevant because Sinterloy did not engage in conciliation when given the opportunity. Bassett also asserts that Hawk was not prejudiced, and "[i]t makes no difference anyway since Hawk solely owned Sinterloy." Bassett does not develop these arguments nor cite relevant legal authority. This court will not scour the record in search of evidence showing Bassett's assertions, nor develop his legal arguments. *See Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002) (if plaintiff fails to make a minimally complete and comprehensible argument, he loses regardless of the claim's merits as they might have appeared on a fuller presentation).

Last, Bassett argues that fundamental fairness dictates that he should be allowed to proceed against Hawk on the ADA claim. In support of this argument, Bassett asserts that he filed his EEOC charge pro se. However, the exception to the rule that a party must be named in an EEOC charge already accounts for the possibility that the complainant may have filed the EEOC charge without assistance of counsel. *See Eggleston*, 657 F.2d at 905-06 (complainants often file EEOC without assistance of counsel and are not familiar with pleading and jurisdictional requirements); *Stephenson v. CNA Fin. Corp.*, 775 F.Supp. 238, 239 n. 3 (N.D. Ill. 1991) (same). As such, Bassett's fundamental fairness argument is without merit.

Viewing the facts in a light most favorable to the nonmoving party, Bassett has not

presented any evidence that Hawk had notice of the ADA claim against it and that Hawk had the opportunity for conciliation. Therefore, the court grants the defendant's motion for summary judgment and dismisses the ADA claim, Count II of the Amended Complaint, against Hawk.

## V. CONCLUSION

For the foregoing reasons, Hawk's motion to dismiss for lack of personal jurisdiction [21-1] is DENIED and Hawk's motion to dismiss Count II of the Amended Complaint [21-1] is GRANTED.

ENTER:

*Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: 8-13-02